Robert BARTHOLOMEW, Jr., Plaintiff–Appellant,

v.

CNG PRODUCING COMPANY, Defendant,

Liberty Mutual Insurance Co., Intervenor–Appellee.

No. 88–4276.

United States Court of Appeals, Fifth Circuit.

Jan. 3, 1989.

As Amended on Denial of Rehearing Jan. 23, 1989.

J. B. Jones, Jr., Jones, Jones & Alexander, Cameron, La., for plaintiff-appellant.

Kenny M. Charbonnet, Metairie, La., for Liberty Mut.

Before RUBIN, GARZA and KING, Circuit Judges.

GARZA, Circuit Judge:

This case calls upon us to perform the task of statutory interpretation. Specifically, we are called upon to interpret the 1984 amendments to the Longshore and Harbor Workers' Compensation Act ("LHWCA") 33 U.S.C. § 901, *et seq* (1984), as they relate to the apportionment of attorney's fees in tort suits under the LHWCA. We today hold that under § 933(f) of the LHWCA, a compensation carrier is not required to bear a portion of a successful longshoreman's attorney's fees. Therefore, the district court's judgment, 682 F.Supp. 32, is AFFIRMED.

## I. *Background*

Mr. Bartholomew was injured while working as a roughneck on an offshore fixed drilling platform situated on the Outer Continental Shelf off the coast of Louisiana. Mr. Bartholomew's Longshore and Harbor Workers' Compensation carrier, Liberty Mutual Insurance Co., paid him approximately $79,000 in compensation and benefits as a result of his injuries.

After receiving the benefits, Mr. Bartholomew filed a tort action against the owner of the offshore fixed drilling platform, CNG Producing Co., in United States District Court for the Western District of Louisiana. The suit was filed September 19, 1985, and went to trial on January 26, 1987. The jury rendered a verdict in favor of Mr. Bartholomew, finding CNG 30% at fault and Booker Drilling 70% at fault for causing Mr. Bartholomew's injuries. The judgment was affirmed by the Fifth Circuit on appeal in *Bartholomew v. CNG Producing Co.*, 832 F.2d 326 (5th Cir.1987).

Four days before trial in the District Court, appellee Liberty Mutual Insurance Co., who had already paid Mr. Bartholomew about $79,000 in Longshore and Harbor Workers' Compensation, intervened in the suit against CNG to recover the amount already paid to Mr. Bartholomew. Including interest, Mr. Bartholomew recovered about $398,00, out of which Liberty Mutual recovered its $79,000 in benefits already paid. Mr. Bartholomew paid approximately $110,000 in attorney's fees out of his $319,000 net recovery left after satisfying the lien of Liberty Mutual.

Liberty Mutual filed its motion to intervene six days before trial, and it was granted four days before trial. Liberty Mutual then filed a three page complaint in intervention and a stipulation as to the amount of benefits already received by Mr. Bartho-

lomew. For its efforts, Liberty Mutual eventually recovered $79,000 out of Mr. Bartholomew's recovery, which was in full restitution of the benefits Liberty Mutual previously paid. Mr. Bartholomew now seeks to apportion a share of his attorney's fees to Liberty Mutual, claiming that by intervening shortly before trial and receiving the full amount of its lien, Liberty Mutual essentially got a free ride.

Deciding the merits of this argument will require a two pronged analysis. First, this court will have to determine whether federal law or Louisiana law applies to the apportionment of attorney's fees. Second, this court will have to determine the content of the applicable law.[1] We now turn to the task of deciding whether federal or Louisiana law applies.

## II. *Federal Law Governs this Dispute*

■ The Outer Continental Shelf Lands Act ("OCSLA") applies to this action, and prescribes that the governing law is federal law, supplemented by state law:

> To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent state, ... are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, ...

43 U.S.C. § 1333(a)(2)(A) (1978). Thus, federal law governs actions under OCSLA to the extent that there is applicable federal law; however, if there is a gap in the federal law, the law of the adjacent state is used as a gap-filler and becomes surrogate federal law. *See Nations v. Morris*, 483 F.2d 577 (5th Cir.1973), *cert. denied* 414 U.S. 1071, 94 S.Ct. 584, 38 L.Ed.2d 477. In this case, if there were no federal law on the issue of apportionment of attorney's fees, then Louisiana law would govern as surrogate federal law.

■ Our research has led us to the conclusion that there is applicable federal law which governs the issue presented before us. Specifically, the issue of apportionment of attorney's fees in suits under the LHWCA was addressed by the Supreme Court in *Bloomer v. Liberty Mutual Ins. Co.*, 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980) and by the 1984 amendments to § 33(f) of the LHWCA, 33 U.S.C. § 933(f) (1984). The next section will more fully explore the content of the above sources, and therefore that discussion is applicable to and will reinforce our conclusion that there is applicable federal law. We now turn to a more detailed discussion of the federal law which we find applicable and its effect on the resolution of this case.

## III. *Federal Law Regarding Apportionment*

■ In 1980, the Supreme Court with its ruling in *Bloomer* reconciled a split in the circuits.[2] In that case, a longshoreman was injured in the course of his employment aboard a vessel and received compensation from his employer's insurance carrier. The longshoreman then brought a diversity action against the shipowner alleging negligence. The employer's insurance carrier successfully moved to intervene in

---

1. To a certain extent, the application/content separation of our analysis is artificial, since one must necessarily determine part of the content of the law to determine if it applies to a given situation. However, we will nonetheless bifurcate our analysis in this way because we feel that it better emphasizes the two issues that this court was called upon to consider and their ultimate resolution.

2. At that time, the Fourth and Ninth Circuits apportioned legal expenses, *Bachtel v. Mammoth Bulk Carriers, Ltd.*, 605 F.2d 438 (9th Cir. 1979); *Swift v. Bolten*, 517 F.2d 368 (4th Cir. 1975). The First Circuit and the Second disallowed apportionment, *Cella v. Partenreederei MS Ravenna*, 529 F.2d 15 (1975), *cert. denied*, 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 799 (1976); *Valentino v. Rickners Rhederei G.M. B.H.*, 552 F.2d 466 (2d Cir.1977). The Fifth Circuit had adopted an approach which called for an individualized inquiry into whether apportionment was fair in the particular case. *Mitchell v. Scheepvaart Maatshappij Trans-Ocean*, 579 F.2d 1274 (1978).

the suit, and ultimately satisfied its lien, which was equal to the amount of benefits already paid to the longshoreman, from the settlement received by the longshoreman. The longshoreman sought to attribute part of his legal expenses to the insurance carrier.

The Supreme Court held in *Bloomer* that the insurance carrier was not required to bear a portion of the legal expenses of the longshoreman. The court, in reaching its decision, relied on the provisions of the LHWCA itself and the legislative history of the act. However, in 1984, four years after the *Bloomer* decision, Congress amended the LHWCA to read as follows:

**(f) Institution of proceedings by person entitled to compensation**

If the person entitled to compensation institutes proceedings within the period prescribed in subsection (b) of this section the employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Secretary determines is payable on account of such injury or death over the *net* amount recovered against such third person. *Such net amount shall be equal to the actual amount recovered less the expenses reasonably incurred by such person in respect to such proceedings (including reasonable attorney's fees).*

33 U.S.C. § 933(f) (1984) (emphasized portions were added by amendments). Thus,

the core issue before this court is whether the 1984 amendments to the LHWCA modified the *Bloomer* rule in a way which will allow the apportionment in this case of legal expenses between Mr. Bartholomew and Liberty Mutual. Under the analysis below, we hold that the 1984 amendments have not modified *Bloomer* in such a way as to allow apportionment of legal expenses in this case. In fact, the effect of the 1984 amendments is to reinforce the holding in *Bloomer,* rather than to undermine it.

To support our view that non-apportionment is the most persuasive construction of § 933(f), we now will "walk through" the statute as we apply it to this case. First one must determine the net amount of recovery, which is defined under the statute as the total recovery by Mr. Bartholomew, minus his legal expenses incurred in effecting that recovery.[3] The net amount of recovery is then compared to the amount which was due as compensation to Mr. Bartholomew, as determined by the Secretary of Labor. If the net amount of recovery exceeds the amount of compensation due to the employee, as is the case here, the employer is not required to pay anything to the employee, and any previous payments by the employer (or its compensation carrier) would have to be refunded by the employee from his recovery in accordance with § 933(e). *See Peters v. North River Ins. Co.,* 764 F.2d 306, 312 (5th Cir.1985).[4]

---

3. It should be noted that Mr. Bartholomew's legal expenses are not fixed but rather arise from a ⅓ contingent fee agreement, with the ⅓ being deducted after the compensation carrier's lien is satisfied. Our discussion in this section, which is intended to illustrate the "nuts and bolts" application of the statute in light of our interpretation of § 933(f) and our interpretation of Congress' intent in passing it, for the sake of simplicity does not incorporate variable legal costs. However, this in no way invalidates the analysis for the purpose of which it is offered, nor is it intended in any way to express disapproval of the contingent fee arrangement in this case. In fact, this court views with more approval contingent fee arrangements which calculate the attorney's share *after* the compensation carrier's lien has been satisfied, rather than before, since they leave the injured employee with a larger recovery. It is our view that fee arrangements like the one in this case are con-

sistent with the wording of § 933(f), even though that section seems to contemplate deduction of reasonable attorney's fees as an expense of the suit. The parties in this case have merely contracted in a way different from, but consistent with, the expectations of the drafters of the LHWCA.

4. On the other hand, if the net recovery is less than the compensation due the employee or leaves the employee with a small recovery, the court may adjust the attorney's fee, but not reduce the compensation carrier's lien.

[The amendments require] that the employee's litigation expenses including reasonable attorney fees, be paid out of any recovery prior to the satisfaction of the compensation lien. It should be stressed though how this rule has special application in the cases where the aggregate of the litigation expenses, the employee's legal fees, and the compensation

Thus, the effect of the 1984 amendments to the LHWCA was to affirm the principle in *Bloomer* that the compensation carrier's lien is inviolate. However, where there is little or nothing left for the injured employee after the compensation carrier's lien and attorney's fees have been deducted from the recovery, the court may adjust attorney's fees in order to obtain a sufficient recovery for the injured worker, who the LHWCA is designed to benefit.[5]

Our construction of the "plain meaning" of § 933(f) is consistent with and influenced by our interpretation of Congress' intent in passing the 1984 amendments to the LHWCA. A joint explanatory statement of the Committee of Conference regarding the intended effect of the 1984 amendment to § 933(f) states:

> [t]he Conference substitute established the following priority for distribution of proceeds in a recovery by an employee; first, the litigation expenses, including reasonable attorney fees, are satisfied. This may require that the Court exercise its discretion to adjust the attorney fee to assume equity for both the employee and his attorney. The compensation lien remains inviolable, consistent with *Bloomer v. Liberty Mutual Insurance Co.*, 445 U.S. 74 [100 S.Ct. 925, 63 L.Ed. 2d 215] (1980).

1984 U.S.Code Cong. and Adm.News at 2786.

This court sympathizes with appellant's argument that it is unfair for Liberty Mutual, and other compensation carriers similarly situated, to get a free ride on the backs of injured longshoremen by intervening shortly before trial, doing little in the way of helping the longshoreman's case, and yet getting a large share of the recovery. However, there is little this court can do to remedy this situation. Congress' intent that the compensation carrier's lien remain inviolate, as shown by the meaning we accord the statute and our interpretation of the legislative history, seems to us to be clear. Congress, which presumably took into account the various competing interests, has decided the question, and only Congress can change its decision by further amendments. The only option which remains open to the longshoremen seeking to impose a fair share of the litigation expenses on the compensation carrier is to attempt to enter into an expense-sharing agreement with the compensation carrier before suit is filed. Yet, a pre-litigation agreement can only be a partial solution due to the disparities in bargaining position between an injured longshoreman and a large insurance company. Perhaps the longshoremen would best be advised to press their views in Congress.

For the reasons set forth above, the judgment of the District Court denying appellant's motion to impose a pro-rata share of attorney's fees on appellee is AFFIRMED.

---

lien leave the employee with little, if any recovery. In such circumstance, the conferees found merit in the approach articulated by the court in *Ochoa v. Employers National Ins. Co.*, 724 F.2d 1171 (5th Cir.1984). That case held that where an employee's third party recovery was insufficient to cover both his attorney fee and the compensation lien, the lien was payable out of the net recovery, after costs of litigation, including reasonable attorney fees, were subtracted. The court of appeals emphasized that only reasonable attorney fees were allowed. Thus, where the recovery is insufficient to cover both the attorney fees and the compensation lien, leaving the employee with nothing, the court must evaluate the reasonableness of the fees and make an equitable adjustment as between the employee and his attorney. As noted in *Ochoa,* this approach attempts to do justice to the employee while upholding *Bloomer v. Liberty Mutual Life Ins. Co.*, 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980), which forecloses an adjustment of an employer's lien in order to underwrite the attorney fees of the employee.

130 Congressional Record § 11626 (daily ed. September 20, 1984) (Statement of Sen. Hatch.)

However, this case is not presented here, as Mr. Bartholomew had an adequate recovery even after attorney's fees and the compensation carrier's lien were deducted.

**5.** *See* Statement of Sen. Hatch at n. 3 *infra. See also Ochoa v. Employers Nat'l Ins. Co.*, 724 F.2d 1171 (5th Cir.1984), *vacated* 469 U.S. 1082, 105 S.Ct. 583, 83 L.Ed.2d 694, *adhered to on remand,* 754 F.2d 1196 (5th Cir.1985).