**James REEVES, Plaintiff–Appellant,**

v.

**B & S WELDING, INC., and Exxon Corporation, Defendants–Appellees.**

No. 88–3831.

United States Court of Appeals, Fifth Circuit.

March 26, 1990.

Paul J. Galuszka, New Orleans, La., for plaintiff-appellant.

Elliott G. Courtright and Robert H. Wood, Jr., New Orleans, La., for Exxon Corp.

David F. Bienvenu and J.B. Treuting, New Orleans, La., for B & S Welding, Inc.

Before POLITZ, KING and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This case arises out of an accident and injury aboard an offshore gas production platform. The district court rendered judgment against Appellant James Reeves, who was injured in the accident. We are called upon to review the district court's findings of fact and the court's conclusion that Texas law applies because appellee Exxon Corp's. platform in the High Island Field is "adjacent" to Texas for purposes of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333.

18. *See* Fed.R.App.P. 10(e).

## FACTS AND PRIOR PROCEEDINGS

In December, 1985, James Reeves was employed as a welder's helper by B & S Welding, Inc. B & S had been hired by Exxon Corp. to repair and replace handrails, gratings, and other items on an offshore platform. This platform, number 342–B, is a fixed, unmanned gas production platform in the High Island Field in the Gulf of Mexico.

On the day of the accident appellant was working with a crew repairing handrails on a stairway on the platform. The other crew members were Ricky Sullivan, a welder's helper and Ralph Besson, a welder. Reeves' crew already had repaired and replaced one handrail. They began removing the other rail on the stairway. Before the handrail could be removed, appellant and Sullivan had to detach from the rail the emergency shut-down line (the "ESD line"), a ⅜ inch stainless steel tube that served as a remote sensor for the platform's fire suppression system. After Reeves and Sullivan detached the ESD line, Besson cut the handrail away from the stairway.

The accident occurred as appellant and Sullivan carried a section of detached handrail down the stairway for disposal. This section of rail was four to six feet long and weighed twenty-five to thirty pounds. Appellant Reeves led the way down the stairs carrying one end of the handrail. The evidence shows that the handrail became entangled with the ESD line causing the handrail to be jerked from Reeves' grasp, causing him to stumble. When this occurred, Sullivan pushed his end of the handrail in an attempt to throw the rail overboard. Unfortunately, the handrail landed on Reeves' boot, injuring his foot.

Appellant sued Exxon and B & S alleging claims under the Jones Act, 46 U.S.C. § 688 and under General Maritime Law. National Union Fire Insurance Co. intervened in an attempt to recover medical expenses it had paid to Reeves as the worker's compensation insurer for B & S. Appellant's Jones Act claim against B & S was later dismissed on the ground that appellant did not qualify as a Jones Act seaman. B & S was dismissed from the case, but was subsequently named as a third-party defendant in an indemnity claim filed by third-party plaintiff Exxon.

In August, 1988, the case was tried before the district court, which issued findings of fact and conclusions of law. The district court rendered judgment in favor of Exxon against appellant and in favor of Exxon against B & S on the third-party claim for indemnity. Reeves filed a timely notice of appeal. B & S did not appeal.

*Is Platform 342–B "Adjacent" to Texas or Louisiana?*

■ The Outer Continental Shelf Lands Act (the "OCSLA") provides that the:

> laws of each adjacent State ... are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the Outer Continental Shelf and artificial islands and fixed structures erected thereon, which would be within the area of the state if its boundaries were extended seaward to the outer margin of the Outer Continental Shelf....

43 U.S.C. § 1333(a)(2)(A). The district court held that Platform 342–B is "adjacent" to Texas. Appellant alleges that this conclusion was error. Appellant endeavors to establish that the platform is adjacent to Louisiana and subject to Louisiana law in order to avail himself of a possible claim under the Louisiana "ruin" statute. Under this statute, La.Civ.Code art. 2322, a building's owner is liable for damages caused by a buildings "ruin," whether the damage stems from a defect in the original construction or from the owner's failure to maintain the structure. *Olsen v. Shell Oil Co.*, 365 So.2d 1285, 1288 (La.1979).

Testimony and exhibits before the district court showed that Platform 342–B is closer to the Texas coast than to the Louisiana coast. Charts submitted by Exxon also indicated that the High Island Field is considered to be "adjacent" to Texas, rather than Louisiana, by the United States Department of Interior Bureau of Land Management, the United States Department of Interior Mineral Management Service, the National Oceanic & Atmospheric Administration, and the Coast Guard. In addition, courts have construed platforms

located in the High Island Field to be adjacent to Texas under the OCSLA. *See e.g. Hebert v. Kerr–McGee Corp.*, 618 F.Supp. 767 (W.D.La.1985) and *J. Ray McDermott and Co. v. Fidelity & Casualty Co.*, 466 F.Supp. 353 (E.D.La.1979).

The boundary between Texas and Louisiana extends south-southeasterly seaward from the Texas/Louisiana coast. *Texas v. Louisiana*, 431 U.S. 161, 97 S.Ct. 2166, 52 L.Ed.2d 225 (1977). Louisiana's offshore territorial waters extend three miles along this south-southeasterly line. *United States v. Louisiana*, 363 U.S. 1, 80 S.Ct. 961, 4 L.Ed.2d 1025 (1960). Texas' offshore claims extend for three marine leagues (approximately ten miles) along this boundary line. *Id.* Appellant argues that if a true north/south line were extended from the point marking the end of Louisiana's three-mile claim, the line would pass to the west of Platform 342–B, thus placing the platform within Louisiana waters. Appellant further contends that if a north/south line were drawn from the point on the boundary line midway between Louisiana's three-mile end-point and Texas' three-league end-point, the line would pass to the west of the platform, placing the platform within Louisiana waters. Exxon counters that if the boundary line were extended in its south-southeasterly direction past Platform 342–B, the line would pass well to the east of the platform. Exxon also argues that a north/south line extended from the point on the boundary marking the end of Texas' three-league territorial claim would pass to the east of the platform.

Appellant's proposed north/south lines are supported only by his expert's endorsement that these lines would be "most equitable." Appellee's lines, on the other hand, are fully consistent with the existing Texas/Louisiana boundary established by the Supreme Court. For purposes of this case, we need not decide which of appellees proposed boundaries is the proper one. Under either a north/south line drawn from the three league point or a south-southeasterly continuation of the established boundary, Platform 342–B is adjacent to Texas. It would not be proper in

this case to adjudicate the boundary itself. That would call for more thorough production of evidence and consideration by the court. It is also a matter of significant concern to the two states themselves, and they should be heard if that issue were to be litigated.

It is enough that the record evidence before the district court confirms that Platform 342–B is closer to the Texas coast than the Louisiana coast, that the relevant federal agencies consider Platform 342–B to be off the Texas coast, that other courts have considered other High Island platforms to be adjacent to Texas, and that the boundary between Texas and Louisiana projected out into the Gulf in its original direction from the shore, places Platform 342–B within Texas waters. So also does a line projected directly southward from the Texas three league territorial boundary. We conclude, therefore, that the district court did not err in holding that Platform 342–B is "adjacent" to Texas for purposes of the OCSLA.

*Are the Findings of Fact Clearly Erroneous?*

Appellant also claims that twenty-six of the district court's thirty-nine findings of fact are erroneous. We review findings of fact under a clearly erroneous standard. Fed.R.Civ.P. 52(a). Findings are clearly erroneous when, after examination of the entire record, the Court is left with a definite and firm conviction that a mistake has been committed. *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). We have thoroughly reviewed the record and appellant's contentions on each of the disputed findings. These asserted erroneous findings are based upon evidence which is conflicting. It was for the district court to resolve those conflicts. We hold, therefore, that the district court's findings of fact are not clearly erroneous.

AFFIRMED.