NANCY F. ATLAS, SENIOR UNITED STATES DISTRICT JUDGE
By Order [Doc. # 71] entered November 1, 2017, motions and other pretrial matters in this case were referred to United States Magistrate Judge Dena Palermo pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). On June 4, 2018, Magistrate Judge Palermo *480 issued a Report and Recommendation [Doc. # 159], recommending that this Court grant the Motion for Partial Summary Judgment on Choice of Law [Doc. # 93] filed by Defendant Marubeni Oil & Gas (USA), Inc. ("MOGUS"), and deny the Motion to Apply Louisiana Law Under OCSLA [Doc. # 99] filed by Plaintiff Total E & P USA, Inc. ("Total").[1]
Total filed timely Objections [Doc. # 161] to the Magistrate Judge's Report and Recommendation, to which MOGUS filed a Response [Doc. # 164], and Total filed a Reply [Doc. # 167]. The Court has reviewed the Report and Recommendation and the parties' briefing in connection with Total's Objections. The Court has also reviewed the applicable legal authorities, particularly the Fifth Circuit's binding decision in Snyder Oil Corp. v. Samedan Oil Corp. , 208 F.3d 521 (5th Cir. 2000), and the Honorable Gray Miller's well-reasoned opinion in Danos & Curole Marine Contractors, Inc. v. BP Am. Prod. Co. , 61 F. Supp. 3d 679 (S.D. Tex. 2014). The Court's review of the Report and Recommendation is de novo . See FED. R. CIV. P. 72(b) ; 28 U.S.C. § 636(b)(1) ; Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l , 695 F.3d 330, 347 (5th Cir. 2012).
Total bases its Objections on the assertion that the Administrative Boundaries Map is the "best evidence" of adjacency, but concedes that this map was not a determination by a United States President. As a result, absent a Presidential determination, the Fifth Circuit has identified four factors to be considered in determining the "adjacent state" analysis for choice of law purposes under the Outer Continental Shelf Lands Act. See Snyder , 208 F.3d at 524-25. The Magistrate Judge properly considered these four factors and correctly determined that Alabama law applies to this dispute.
The Court, based on its de novo review, agrees fully with the Report and Recommendation. The Report and Recommendation will be adopted as this Court's Memorandum and Order. Accordingly, it is hereby
ORDERED that Total's Objections [Doc. # 161] to the Report and Recommendation are OVERRULED . It is further
ORDERED that the Magistrate Judge's Report and Recommendation [Doc. # 159] is hereby ADOPTED as the Court's Memorandum and Order. It is further
ORDERED that MOGUS's Motion for Partial Summary Judgment on Choice of Law [Doc. # 93] is GRANTED and Total's Motion to Apply Louisiana Law Under OCSLA [Doc. # 99] is DENIED .
REPORT AND RECOMMENDATION ON CROSS MOTIONS REGARDING CHOICE OF LAW
06/04/2018
Dena Hanovice Palermo, United States Magistrate Judge
Before the Court are the Parties' cross motions for summary judgment on the choice of law.[1] Plaintiff Total E & P USA, Inc. ("Total") filed a Motion to apply Louisiana law under the Outer Continental Shelf Lands Act ("OCSLA"). Pl.'s Mot., ECF No. 99.[2] Defendant Marubeni Oil &
*481 Gas (USA) LLC ("MOGUS") filed a Motion for Partial Summary Judgment to apply Alabama law. Def.'s Mot. Part. Summ. J., ECF No. 93.[3] Having considered the filings and the record, which contain both factual evidence and applicable legal authorities, the Court concludes that Alabama law should apply. Therefore, MOGUS' motion should be granted and Total's motion be denied.
I.
FACTUAL OVERVIEW
This case arises out of a dispute over liability for the decommissioning of three properties located in the Outer Continental Shelf ("OCS") in the Gulf of Mexico. This includes two oil and gas fields-Mississippi Canyon Block 305 ("MC 305") and Mississippi Canyon Block 348 ("MC 348")-and the Canyon Express Pipeline System ("CEPS") (collectively "the Assets") that connects these fields and others. Total filed a separate action as to each MC 305, MC 348, and CEPS, and MOGUS filed identical counterclaims in each case relating to all three properties.[4] Total's action concerning CEPS is pending before this Court. Total's other two actions concerning MC 305 and MC 348 are pending before other courts in the Southern District of Texas.[5] While the action concerning MC 348 is stayed, the Parties filed similar motions on the choice of law in the MC 305 action.[6] "The CEPS traverses from MC 305 and MC 348 in a north/northeasterly direction and terminates at the Canyon Station Platform located on Main Pass Block 261 ("MP 261")." Def.'s Mot. Part. Summ. J. at 2, ECF No. 93. The CEPS traverses through each of the following OCS lease blocks in the Gulf of Mexico: MC 41, 85, 173, 217, 261, 305, 348, and 349; DeSoto Canyon Blocks ("DC"): 45, 89, 133, 177, 221, 265; Viosca Knoll Blocks ("VK") 692, 736, 780, 781, 824, 825, 869, 913, 914, 958, 1002, and 1003; MP 260 and 261. Id.
II.
LEGAL STANDARD
Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " Trent v. Wade , 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a) ). "[B]ecause a choice of law determination is a question of law, the traditional standard for summary judgment does not apply." Danos & Curole Marine Contractors, Inc. v. BP Am. Prod. Co. , 61 F. Supp. 3d 679, 683 (S.D. Tex. 2014). "Instead, the facts on which choice of law depends are properly determined by the Court after considering the affidavits, depositions, and other matters submitted by the parties." Id.
III.
ANALYSIS
Both Total and MOGUS agree that, because the Assets are located in *482 the OCS, the OCSLA governs their dispute. Pl.'s Mot. at 7-8, ECF No. 99; Def.'s Mot. Part. Summ. J. at 4, ECF No. 93.
OCSLA grants jurisdiction to the United States "over the soil and seabed of the oceans and artificial islands and fixed structures located thereon, and grants to the United States the mineral resources that are part of the OCS."
Danos , 61 F. Supp. 3d at 683 (quoting Snyder Oil Corp. v. Samedan Oil Corp. , 208 F.3d 521, 522 (5th Cir. 2000) ). The OCSLA provides this Court with subject matter jurisdiction. 43 U.S.C. § 1349(b)(1)(A).
The Court must examine "the OCSLA choice of law provision to ascertain whether state, federal, or maritime law applies...." Petrobras Am., Inc. v. Vicinay Cadenas, S.A. , 815 F.3d 211, 215 (5th Cir. 2016). "Federal law governs actions brought under OCSLA, unless there is a gap in the federal law, wherein 'the law of the adjacent state' will be used as 'surrogate federal law.' " Danos , 61 F. Supp. 3d at 683 (quoting Bartholomew v. CNG Prod. Co. , 862 F.2d 555, 557 (5th Cir. 1989) ). Adjacent state law will apply if (1) the controversy arises on a situs the OCSLA covers, (2) federal maritime law does not apply of its own force; and (3) state law is not inconsistent with federal law. Petrobras, 815 F.3d at 216. "This Congressionally mandated choice of law provision trumps any contrary contractual provisions." Snyder , 208 F.3d at 524.
Total explains that the Parties do not dispute that the OCSLA covers this controversy and maritime law does not apply. Pl.'s Mot. at 7-8, ECF No. 99. The Parties have brought contractual and declaratory judgment claims, which state law-not federal law-governs, and applicable state law is not inconsistent with federal law. Id. at 8. MOGUS does not dispute this contention. Def.'s Opp'n at 2, ECF No. 105 ("The only question to be resolved is whether Alabama or Louisiana is the 'adjacent' state for purposes of filling any gap in federal law under 43 U.S.C. § 1333(a)(2)(A)."). Accordingly, this Court finds that these requirements are satisfied, such that the OCSLA governs this dispute, maritime law does not apply, state law is not inconsistent with federal law, and the primary issue before this Court is which state is adjacent to the CEPS' location.
Regarding determination of the adjacent state, the OCSLA provides that:
To the extent that they are applicable ... the civil and criminal laws of each adjacent state ... are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the [OCS], and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, and the President shall determine and publish in the Federal Register such projected lines extending seaward and defining such area.
43 U.S.C. § 1333(a)(2)(A).
The President has not yet published such boundaries. Snyder , 208 F.3d at 523, 524. In its absence, "the courts must adjudicate adjacency in private disputes governed by the OCSLA." Id. at 523. While the Fifth Circuit "did not articulate a specific test, [it] consider[s] four types of evidence in the 'adjacency' analysis: (1) geographic proximity; (2) which coast federal agencies consider the subject platform to be 'off of'; (3) prior court determinations; and (4) projected boundaries." Id. at 524 (citing Reeves v. B & S Welding, Inc. , 897 F.2d 178, 180 (5th Cir. 1990) ). The Court examines each of these factors.
*483 A. The First Factor: Geographic Proximity.
In this case, the Parties agree that the Assets are closer to Louisiana.[7] Pl.'s Mot. at 6 ¶ 9, ECF No. 99; Def.'s Opp'n at 4, ECF No. 113. In support, Total cites to a 2001 Minerals Management Service ("MMS") notice ("2001 MMS Notice") of an environmental assessment for the "proposed deepwater project to develop and produce hydrocarbon reserves about 70 miles offshore Louisiana and about 90 miles south of Alabama." Pl.'s Mot. Ex. D, ECF No. 99-6 (containing the 2001 MMS Notice, 66 Fed. Reg. 149 (Aug. 2, 2001) ). MOGUS concedes that MC 305, MC 348, and CEPS are geographically closer to Louisiana. Def.'s Opp'n at 4, ECF No. 113.
According to the Fifth Circuit, this factor is not necessarily controlling. "If proximity were controlling for purposes of § 1333(a)(2)(A) ... we would not have considered other evidence in Reeves ." Snyder , 208 F.3d at 524 (rejecting exclusive reliance on geographic proximity unless this is the only factor for which the parties present evidence) (finding MP 261 to be closer to Louisiana than Alabama, but ultimately finding Alabama to be the adjacent state based on other factors); see also Danos , 61 F. Supp. 3d at 687 (finding VK 915 to be closer to Louisiana than Alabama, but ultimately finding Alabama to be the adjacent state based on the other three factors).
B. The Second Factor: Federal Agency Determinations.
"Agency determinations are relevant in the adjacent state analysis because agency 'determinations of projected boundaries, or other determinations of a similar nature, make it more probable that if the President does ever 'project boundaries' those boundaries will be consistent with these other agency determinations.' " Danos , 61 F. Supp. 3d at 689 (quoting Snyder , 208 F.3d at 525 ). "Amongst multiple agency determinations, one agency's determination may be more probative than another [agency's] if it is believed that [one] agency more closely followed the dictates of § 1333(a)(2)(A)." Id. (citing Snyder , 208 F.3d at 525 ). Likewise, one determination of the same agency may be more probative than another if it follows the dictates of the statute more closely in one instance than the other.
Both Parties rely on maps and other documents that the MMS and Bureau of Ocean Energy Management ("BOEM") published. Effective May 19, 2010, MMS was dissolved and ultimately divided into three separate entities. Effective October 2011, BOEM and Bureau of Safety and Environmental Enforcement ("BSEE") became two of the successor entities.
Based on review of the submitted evidence and the cases that have previously analyzed some of the same evidence, the Court finds that the BOEM Coastal Zone Management maps have greater detail.[8] The Plans Map extends the state borders' to the OCS, following a natural seaward extension. This is significant with respect to Alabama and Mississippi. In the Plans Map, Mississippi and Alabama each have a small share of the Gulf, Louisiana and Florida have larger shares, in each case consistent with their coastlines. In the ROW Map, Alabama's border is not extended to the OCS, but the other states *484 borders are. Some of the portion of the Gulf under Alabama is not assigned to any other state, and Alabama's border is extended to include most of the area in which the Assets are located. Def.'s Mot. Part. Summ. J. Ex. B, ECF No. 93-7; Def.'s Mot. Part. Summ. J. Ex. C, ECF No. 93-8. The Court finds the Plans Map to be the most persuasive of the maps submitted because it more closely follows the dictates of § 1333 and more fairly allocates the Gulf waters to the states consistent with their share of the coastline. See Danos , 61 F. Supp. 3d at 690.
In contrast, in the 2006 MMS map,[9] which BOEM later reissued, the Gulf Coast is divided between Texas, Louisiana, and Florida, with most of the land split between Louisiana and Florida. Pl.'s Mot. Ex. A, ECF No. 99-3; Pl.'s Mot. Ex. C, ECF No. 99-5. Mississippi has only a small corner and Alabama has a small triangle of the Gulf.[10] Their borders are not extended to the outer margin of the OCS, which is why the Court finds these maps to be less persuasive.
Much of the evidence the Parties rely on was reviewed in other court opinions. The Court considered all of the evidence submitted as follows:
1. Total's proffered federal agency sources are not persuasive.
Total relies on the following federal agency documents[11] to show Louisiana is adjacent: (1) MMS Projected State Boundaries Map,[12] (2) BOEM OCS Administrative Boundaries Map,[13] (3) 2001 MMS notice,[14] (4) MMS News Release dated July 17, 1998 ("1998 MMS News Release"),[15] and (5) U.S. Energy Information Administration ("EIA") listing of U.S. oil and gas field names.[16]
a. MMS Projected State Boundaries Map and BOEM OCS Administrative Boundaries Map
The MMS Projected State Boundaries Map and BOEM OCS Administrative Boundaries Map depict the same boundaries, with the Assets in Louisiana waters. Pl.'s Mot. at 10, ECF No. 99. In 2006, MMS explained its purpose in developing these maps was to "[a]ssist[ ] in 'affected State' status under the [CZM] and the [OCSLA]."[17] The 2006 MMS notice also explained its method to determine the boundaries, the equidistant principle, and included a preliminary version of the BOEM OCS Administrative Boundaries *485 Map.[18] However, "[t]he lines do not completely follow the [OCSLA], [ ] because the state's borders do not extend to the outer margin of the OCS, as Mississippi's boundary and Alabama's boundary stop short of the OCS."[19] Danos , 61 F. Supp. 3d at 690, 691. Consequently, the Danos court found these maps less probative than other evidence. Id. This Court agrees with the Danos opinion that these maps are not persuasive.
b. The 2001 MMS Notice
Total cites to the 2001 MMS Notice as proof that Louisiana is the affected state. Although the 2001 MMS Notice states the proposed project is closer in proximity to Louisiana than Alabama, it did not otherwise make a determination that the Assets are within either Louisiana or Alabama's borders, or which state is adjacent under the OCSLA. Pl.'s Mot. Ex. D, ECF No. 99-6. Thus, the 2001 MMS Notice is of limited probative value.
c. The 1998 MMS News Release
The 1998 MMS News Release identifies "the Desoto Canyon Block 133 Field [as] offshore Louisiana." Pl.'s Mot. Ex. D, ECF No. 99-6. DeSoto Canyon Block 133 is one of the blocks CEPS traverses. However, other than stating this block is "offshore Louisiana," this news release does not otherwise explain what this statement is based upon, or determine which is the adjacent state under the OCSLA. Thus, this news release is not as probative as other evidence.
d. The EIA List
The EIA listing of U.S. oil and gas field names codes "LA" for Louisiana as to MC 305 and 348, as well as other blocks CEPS traverses (MP 260, 261; MC 85, 173, 217; VK 692, 736, 780, 824, 825, 869, 913, 914, 1003). However, numerous blocks that CEPS traverses are not included at all, or coded for any state (MC 41, 261, 349; VK 781, 958, 1002; DS 45, 89, 221, 266).[20] The court in Danos previously found this EIA list to be "less probative than other evidence submitted because it is unclear how the EIA determines [each] block's association, even after a review of the cited online sources, which would provide perspective as to how closely the determinations followed the requirements the President must follow under § 1333(a)(2)(A)." 61 F. Supp. 3d at 689. This Court agrees that the EIA list is less probative than other evidence.
2. MOGUS' proffered federal agency sources are more persuasive.
MOGUS relies on the following federal agency documents[21] to show Alabama is the adjacent state:[22] (1) BOEM OCS Plans *486 Map,[23] (2) BOEM ROW Map,[24] and (3) MMS CZM Program Requirements for OCS Right-of-Way Pipeline Applications ("ROW Applications Requirements").[25]
a. Plans Map and ROW Map
The BOEM Plans Map and BOEM ROW Map depict "affected states" for activities in the OCS.[26] Both maps put the Assets in Alabama's extended borders.
The court in Danos ultimately relied on these two maps to find that Alabama is the adjacent state for VK 915 (a property near the Assets). The court also examined
BOEM's current online maps that plot the affected states for each block to determine the relative probative value of the evidence based on whether the lines were drawn closely following § 1333(a)(2)(A). [Regarding the affected states for pipeline right of way applications,][ROW Map] [t]hese areas extend outward from the state boundaries to the OCS, except for the Alabama area. Further, there are areas of overlap between Louisiana, Mississippi, Alabama and Florida, which means these lines do not always differentiate one state's area from another, which seems less consistent with the requirements in § 1333(a)(2)(A).... ... [Regarding MMS's planning area for coastal zone management designation,][Plans Map] ... these boundaries do extend seaward from each state's borders all the way to the OCS. However, there is overlap amongst Louisiana and Mississippi and Mississippi and Florida, which is not consistent with a boundary that would differentiate between which state's law would apply.
Id. at 690. In Danos, Alabama was the only affected state for the block in question.
Likewise, here the Assets are exclusively in Alabama waters on the Plans Map. Thus, under the BOEM Plans Map, Alabama is the affected state for all three Assets. The Plans Map provides the most probative evidence to support finding that *487 Alabama is the adjacent state for the three Assets at issue in this litigation.
On the ROW Map, all but four of the blocks that CEPS traverses are exclusively in the Alabama zone. None of them are in the Louisiana zone. Four of the blocks are not highlighted as associated with any state, the two blocks at issue-MC 305 and 348-as well as MC 349 and DC 265. Like the other blocks that CEPS traverses, these four also appear to be exclusively in Alabama coastal waters. Consequently, the Court finds that the ROW map provides additional probative support that Alabama is the affected state for the Assets.
b. The ROW Applications Requirements
The 2009 ROW Applications Requirements Appendix A-1 lists all OCS blocks for which Alabama is an affected state. It includes all blocks that comprise CEPS except for the two blocks at issue-MC 305 and 348, and three others-MP 260, 261, and 282. Total has not established that these blocks were included on a similar list for Louisiana. Instead, Total points out that this document also states "Louisiana is an affected State if the proposed [right-of-way] pipeline is adjacent to the State of Louisiana or if any support facilities will be located in the State." Pl.'s Reply at 6, ECF No. 130. Total argues that "[i]t is undisputed that the main support facilities for operations at MC 305, MC 348, and, in particular, CEPS, were located in Louisiana. Thus, Louisiana is itself 'an affected state'...." Id.[27]
MMS does not explain how these boundaries were decided in 2007. The list appears to be outdated because the relevant blocks for two of the Assets and others are not included. In addition, the location of support facilities is not one of the factors the Fifth Circuit identified in Reeves and Snyder, but the Court may consider it because those factors are not exclusive. See Snyder , 208 F.3d at 525 (The Fifth Circuit in " Reeves did not establish a strict four-factor test, but instead considered all four categories of relevant evidence before the court."). In this instance, it merely suggests that both Louisiana and Alabama are affected states for the purposes of the ROW application.
The Court finds the reasoning in Danos persuasive and concludes the BOEM Plans Map and BOEM ROW Map place these Assets squarely in Alabama waters.
C. The Third Factor: Prior Court Determinations.
No court has previously determined which state is adjacent to MC 305, MC 348, or CEPS for the purpose of the OCSLA. The Parties instead rely on cases that determined adjacency for other blocks in the vicinity of the Assets.
1. Total's cases do not establish Louisiana is the adjacent state.
Total cites the following cases for the proposition that previous courts have determined Louisiana to be the adjacent state for MC 243, 754, 755, 773, and 809: Spisak v. Apache Corp. , No. 15-CV-02305, 2017 WL 946714, at *5 (W.D. La. Mar. 8, 2017) (MC 773); In re ATP Oil & Gas Corp. , No. 12-36187, 2014 WL 61408, at *4 (Bankr. S.D. Tex. Jan. 6, 2014) (MC 711, 754, and 755); Mooney v. W & T Offshore, Inc. , No. 12-969, 2013 WL 828308, at *5 (E.D. La. Mar. 6, 2013) (MC 243); Ronquille v. MMR Offshore Servs., Inc. , 353 F. Supp. 2d 680, 681 n.3, 682 n.4 (E.D. La. 2004) (MC 809). Although these courts applied Louisiana law, none of these cases *488 applied § 1333 and therefore provide no support for the issue here.
In three of the cases, the parties agreed that Louisiana was the adjacent state. For example, in Spisak , the issue was whether maritime or Louisiana law applied to a platform located at MC 773, not whether Louisiana or some other state should be considered the adjacent state. 2017 WL 946714, at *1. The parties did not dispute that Louisiana was the adjacent state, if state law rather than maritime law applied. Id. Likewise, in both In re ATP Oil & Gas Corp. and Ronquille , again the parties did not dispute that, unless Louisiana law was inconsistent with federal law, Louisiana was the adjacent state. In re ATP Oil & Gas Corp. , 2014 WL 61408, at *4 ; Ronquille , 353 F. Supp. 2d at 681 n.3, 682 n.4. None of these cases engaged in the four factor analysis to determine the adjacent state.
In Mooney , choice of law was not at issue, and the court did not engage in any choice of law analysis or analyze the factors set out in Reeves or Snyder . 2013 WL 828308, at *2. Instead, the only disputed issue was whether a platform located at MC 243 was a vessel for the purposes of the Jones Act and the Longshore and Harbor Workers' Compensation Act. Id. The court mentioned that the platform was in the area of MC 243 "in the Gulf of Mexico on the Outer Continental Shelf off the coast of Louisiana ...." Id. at *5 (emphasis added). This is not a determination that Louisiana is the adjacent state for choice of law purposes under the OCSLA.[28]
2. MOGUS' cases apply the § 1333 four factor analysis and are therefore more persuasive.
MOGUS cites the following cases for the proposition that previous courts have determined Alabama to be adjacent to MP 261, VK 786, 823, 915, and 956: Snyder , 208 F.3d at 528 (MP 261) ; Noel v. Freeport-McMoran Oil & Gas, LLC , No. 15-2411, 2017 WL 515072, at *1 (E.D. La. Feb. 8, 2017) (VK 915); Lewis v. Helmerich & Payne Int'l Drilling Co. , No. 13-5995, 2015 WL 1040458, at *4 (E.D. La. Mar. 10, 2015) (VK 956); Danos , 2014 WL 6477175, at *6 (VK 915) ; Minute Order, Brown v. Total E & P USA Inc. , No. 2:07-CV-08133, at 1 (E.D. La. June 23, 2008), ECF No. 77[29] (VK 823); Texaco Expl. & Prod., Inc. v. AmClyde Engineered Prods., et al. , No. CIV.A. 00-0813, 2008 WL 782818, at *4 n.1 (E.D. La. Mar. 20, 2008) (VK 786).
In Texaco, the parties agreed that Alabama law applied as the law of the adjacent state under the OCSLA. 2008 WL 782818, at *2, 5 n.1. For the same reasons the Court discounted Total's cases, this does not provide support that Alabama is the adjacent state or that its law applies. In Brown , the court did not apply the § 1333 four factor analysis, but determined without explanation that Alabama was the adjacent state. Minute Order, No. 2:07-CV-08133, at 1, ECF No. 77. Again, this provides no support for the proper determination of which state is the adjacent state.
The remaining cases MOGUS cited engaged in the § 1333 four factor analysis to find that Alabama-not Louisiana-was *489 the adjacent state under the OCSLA. Snyder , 208 F.3d at 528 ; Lewis , 2015 WL 1040458, at *4 ; Danos , 2014 WL 6477175, at *6. In Noel , the court followed Danos because the same block was at issue, and Plaintiff filed no objection that Alabama law applied. 2017 WL 515072, at *1. These cases involved blocks near MC 305, MC 348, and CEPS. Accordingly, the Court finds their analysis persuasive.
3. Other blocks determined adjacent to Alabama are closest to the Assets.
Total argues the Court must look to prior determinations of blocks in the same named area, i.e. in the Mississippi Canyon, to promote "consistency and predictability". Pl.'s Mot. at 11. Total cites to Snyder , which observed that, in Reeves , the court considered that prior "courts have construed platforms located in the High Island Field to be adjacent to Texas under the OCSLA" to find that Texas was the adjacent state for the block in question. Id. at 11 (citing Snyder , 208 F.3d at 523 (citing Reeves , 897 F.2d at 179-80 )).
MOGUS contends the Court must look to prior determinations of blocks "in the vicinity" of the ones at issue. Def.'s Opp'n at 10, 15 (citing Danos , 61 F. Supp. 3d at 687 (considering Snyder relevant because the block it decided was adjacent to Alabama, MP 261, was located near VK 915) and Lewis , 2015 WL 1040458, at *4 (considering Snyder relevant because the block it decided was adjacent to Alabama, MP 261, was "geographically close" to VK 956)).
Total asks this Court to apply Louisiana law based on cases that did not rely on the § 1333 analysis. The Court already found that those cases were irrelevant to this analysis. Furthermore, while in Reeves prior determinations in the same area were relevant to its analysis, the court did not establish a strict rule as Total proposes, and more recent cases have simply looked at prior determinations of nearby blocks. Consistency does not override the § 1333 analysis. Significantly, looking at blocks in the vicinity makes logical sense. The Fifth Circuit has also already determined that MP 261, which CEPS traverses, was adjacent to Alabama. Snyder , 208 F.3d at 528 ; see also Phillips v. Williams Oilfield Servs.-Gulf Coast Co., LLP , No. 03-1984, 2006 WL 1098923, at *2 (W.D. La. Apr. 21, 2006) (also applying Alabama law as adjacent state law to MP 261).[30] CEPS itself runs through several areas including the Main Pass, Viosca Knoll, DeSoto Canyon, and Mississippi Canyon. Blocks in the Main Pass and Viosca Knoll areas have been found to be adjacent to Alabama using the § 1333 analysis. Blocks that are both east and west of CEPS have been determined to be adjacent to Alabama. To find that some blocks east and west of CEPS are adjacent to Alabama, but the blocks in between are adjacent to Louisiana, as Total contends, would make little sense.
Regarding the blocks Total claims have previously been determined to be adjacent to Louisiana, they are all significantly farther west and south of CEPS than the blocks MOGUS relies on to support the application of Alabama law. For example, Total relies on the following blocks: MC
*490 243 is 18 blocks west of MC 261, which CEPS traverses.[31] MC 711 is 33 blocks west and nine blocks south of MC 348. MC 754 is 34 blocks west and ten blocks south of MC 348. MC 755 is 33 blocks west and ten blocks south of MC 348. MC 809 is 23 blocks west and 11 blocks south of MC 348. MC 773 is 15 blocks west and ten blocks south of MC 348.
The blocks MOGUS claims have previously been determined to be adjacent to Alabama are significantly closer to the Assets at issue. For example, MP 261 is the northernmost and westernmost block that the CEPS traverses. VK 956 is one block south and one block west of VK 913, and two blocks west of VK 958, both of which CEPS traverses. VK 823 is one block west of VK 824, which CEPS traverses. VK 915 is one block east of VK 914, which CEPS traverses. VK 786 is five blocks east of VK 781, which CEPS traverses. Because these blocks are all significantly closer to the Assets and some are directly east and west of CEPS, this factor weighs in favor of finding Alabama is the adjacent state.
D. Fourth Factor: Projected Boundaries.
Total urges this Court to use the projected boundaries of MMS, BOEM, and EIA, which would put the Assets in Louisiana waters. Pl.'s Mot. at 13, ECF No. 99. MOGUS urges the court to employ a north/south boundary line. Def.'s Mot. Part. Summ. J. at 12, ECF No. 93. Prior courts have applied a due south or natural southeasterly extension of the Mississippi/Alabama border into the OCS. Snyder , 208 F.3d at 526, 528 ; Lewis , 2015 WL 1040458, at *4 ; Danos , 61 F. Supp. 3d at 691. The OCSLA instructs that boundaries should be "extended seaward to the outer margin of the Outer Continental Shelf...." 43 U.S.C. § 1333(a)(2)(A).
If the Mississippi/Alabama border is extended seaward in a south/southeasterly direction, or a true north/south direction, the Assets would fall in Alabama waters. If the boundary is drawn in accordance with the exhibits Total submitted, the Assets would fall in Louisiana waters. Total has not cited a single case that has analyzed the projected boundary factor and applied the boundary it suggests; to the contrary, Judge Miller in the Southern District of Texas explicitly rejected this boundary. Danos , 61 F. Supp.3d at 689-90. In contrast, the Fifth Circuit followed the dictates of § 1333 that the borders extend to the outer margin of the OCS and relied on projected borders extended seaward in a natural south/southeasterly direction. Snyder , 208 F.3d at 528. Therefore, this Court will follow Fifth Circuit controlling precedent and apply the same boundary.
The court in Danos applied a seaward extension of the Mississippi/Alabama border in a south/southeasterly direction, finding that Alabama was the adjacent state to VK 915, which is one block east of VK 914. The court in Danos gave less weight to BOEM's administrative boundaries which put VK 915 in Louisiana water[32] -the same exhibit Total proffered[33] -because it depicted "an administrative boundary that was not developed to determine the adjacent state under" the OCSLA. 61 F. Supp. 3d at 690, 692. In Snyder , the Fifth Circuit determined that "an extension of the Mississippi-Alabama boundary, whether *491 due south or in its natural southeasterly direction, results in [MP] 261's falling on the Alabama side...." 208 F.3d at 528. MP 261 is where CEPS ends, and the westernmost point of CEPS. In Lewis , the court applied boundaries as per BOEM among other evidence, including the same Plans Map MOGUS submitted, putting VK 956 in Alabama waters.[34] 2015 WL 1040458, at *4. VK 956 is west of CEPS.
Thus, the Court finds that this factor weighs in favor of Alabama being the adjacent state.
IV.
CONCLUSION
Since three of the four factors weigh in favor of Alabama as the adjacent state, and only one (proximity) weighs in favor of Louisiana as the adjacent state, this Court recommends that Defendant MOGUS' Motion for Partial Summary Judgment to Apply Alabama law should be GRANTED , and Plaintiff Total's Motion to Apply Louisiana Law should be DENIED .
The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C) ; FED. R. CIV. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error. Quinn v. Guerrero , 863 F.3d 353, 358 (5th Cir. 2017).
Appendix A *492 Appendix B *493 Appendix C *494 *495 Appendix D *496 --------

Total filed its Opposition [Doc. # 113] to MOGUS's Motion, and MOGUS filed a Reply [Doc. # 122]. MOGUS filed its Opposition [Doc. # 105] to Total's Motion, and Total filed a Reply [Doc. # 130].

On November 1, 2017, Judge Atlas referred this case for all pretrial purposes. Order, ECF. No. 71.

MOGUS filed a response (ECF No. 105), and Total filed a reply (ECF No. 130).

Total filed a response (ECF No. 113), and MOGUS filed a reply (ECF No. 122).

Although MOGUS' motion refers only to the CEPS asset, because MOGUS' counterclaim concerns all three Assets, it implicates the choice of law for all three properties.

The action regarding MC 305 is pending before Judge Hittner (No. 4:16-CV-02674), and the action regarding MC 348 is pending before Judge Hughes (No. 4:16-CV-02678).

Total filed a motion to apply Louisiana law (ECF No. 141). MOGUS filed a response (ECF No. 161). Total filed a reply (ECF No. 187). MOGUS filed a Motion for Partial Summary Judgment on the choice of law (ECF No. 157). Total filed a response (ECF No. 166). MOGUS filed a reply (ECF No. 177).

Total, however, concedes that the northernmost points of CEPS approach closer to Alabama. Pl.'s Reply at 10, ECF No. 130.

See BOEM OCS Plans Map for Coastal Zone Management ("CZM") Program ("Plans Map") and BOEM Right-of-way Pipeline Map for CZM Program ("ROW Map"), attached as Appendix A & B.

Pl.'s Opp'n Ex. D, ECF No. 113-6.

Compare MMS Projected State Boundaries Map, with Bureau of Ocean Energy Management (BOEM) OCS Administrative Boundaries Map, attached as Appendix C & D.

Total also cites to two corporate development plans for MC 305 and 348 that identify the relevant blocks as "offshore Louisiana." Pl.'s Opp'n Ex. A, ECF No. 113-3; Pl.'s Opp'n Ex. B, ECF No. 113-4. The companies who developed the plans were Total and Marathon Oil Company, respectively, not federal agencies.

Pl.'s Mot. Ex. A, ECF No. 99-3, also available at www.marticons.com/sites/default/files/resources/gom_lease-block_map.pdf. See Appendix C.

Pl.'s Mot. Ex. C, ECF No. 99-5, also available at www.boem.gov/uploadedFiles/BOEM/Oil_and_Gas_Energy_Program/Mapping_and_Data/Administrative_Boundaries/Gulf_Plan.pdf. See Appendix D.

Pl.'s Mot. Ex. D, ECF No. 99-6.

Pl.'s Mot. Ex. E, ECF No. 99-7, also available at www.boem.gov/BOEM-Newsroom/Press-Releases/1998/80042.aspx.

Pl.'s Mot. Ex. F. ECF No. 99-8, also available at www.eia.gov/naturalgas/fieldcode/archive/2015/fcml.php.

Pl.'s Opp'n Ex. D, ECF No. 113-6.

Pl.'s Opp'n Ex. D, ECF No. 113-6 at 2-3.

In Danos , the court considered the same BOEM map Total submitted. Compare Pl.'s Mot. Ex. C, ECF No. 99-5, with Ex. B to Def.'s Opp'n, Danos & Curole Marine Contractors, Inc. v. BP Am. Prod. Co. , No. 4:13-CV-3803, 2014 WL 12783809 (S.D. Tex. filed July 3, 2014), ECF No. 21-1. See Appendix C.

DC 133 and 177 are coded "OG," however, the meaning of this code is not explained clearly in the EIA list or the background materials. See U.S. Energy Information Administration, About the Oil and Gas Field Master List at 1, 7, available at www.eia.gov/naturalgas/fieldcode/archive/2015/pdf/fcml.pdf.

MOGUS also cites to one of Total's corporate publications: "Canyon Express: The innovative solution." In this publication, Total identifies the Assets as "off the coast of Alabama." Def.'s Opp'n Ex. C, ECF No. 105-10.

While not relying on this to show which state is adjacent, MOGUS cites to the BSEE information on rights-of-way to depict the blocks through which CEPS traverses. The pages depicting right of way information for MC 348 and MP 261 are stamped by a land surveyor from the State of Louisiana. Def.'s Mot. Part. Summ. J. Ex A-1, ECF No. 93-2; Def.'s Opp'n Ex. A-3, ECF No. 105-5 (same as ECF No. 93-2).
MOGUS also includes the BOEM Map of Active Leases and Infrastructure to show where the affected blocks are located. Def.'s Mot. Part. Summ. J. Ex. A-2, ECF No. 93-3, also available at www.boem.gov/Visual-1-Active-Leases-and-Infrastructure; Def.'s Mot. Part. Summ. J. Ex. A-3, ECF No. 93-4 (magnified version of ECF No. 93-3); Def.'s Mot. Part. Summ. J. Ex. A-5, ECF No. 93-6 (magnified version of No. 93-3); Def.'s Opp'n, Ex. A-1, ECF No. 105-3 (magnified version of ECF No. 93-3); Def.'s Opp'n, Ex. A-2, ECF No. 105-4 (magnified version of No. 93-3); Def.'s Opp'n Ex. A-5, ECF No. 105-7 (magnified version of No. 93-3); Def.'s Opp'n Ex. A-6, ECF No. 105-8 (magnified version of No. 93-3); Def.'s Opp'n Ex. G, ECF No. 105-14 (magnified version of No. 93-3).

Def.'s Mot. Part. Summ. J. Ex. B, ECF No. 93-7, also available at www.boem.gov/OCS-Plans-Map-for-CZM; Def.'s Opp'n Ex. D, ECF No. 105-11 (same as ECF No. 93-7). See Appendix A.

Def.'s Mot. Part. Summ. J. Ex. C, ECF No. 93-8, also available at www.boem.gov/ROW-Pipeline-Map-for-CZM; Def.'s Opp'n Ex. E, ECF No. 105-12 (same as ECF No. 93-8). See Appendix B.

Def.'s Mot. Part. Summ. J. Ex. A-4, ECF No. 93-5; Def.'s Opp'n Ex. A-4, ECF No. 105-6 (same as ECF No. 93-5).

Total contends the National Oceanic and Atmospheric Administration (NOAA), not BOEM, actually made the maps, thereby making them less relevant. Pl.'s Opp'n at 4-5, ECF No. 113. However, the maps have the BOEM logo on them, and the BOEM website explains its role with regard to Coastal Zone Management. See Coastal Zone Management Act, available at www.boem.gov/Coastal-Zone-Management-Act. Thus, Total's contention is without merit.

Total cites a Shorebase Activity Report MOGUS produced. Pl.'s Opp'n Ex. C, ECF No. 113-5; Pl.'s Reply Ex. G, ECF No. 130-3. In this report, MOGUS identifies the shorebase as located in Louisiana.

Total also refers to one court that noted CEPS was "off of the coast of Louisiana," but concedes this was "not in the context of actually needing to decide adjacency for purposes of OCSLA." Pl.'s Mot. at 12 (citing Pioneer Nat. Res. USA, Inc. v. Diamond Offshore Co. , 638 F. Supp. 2d 665, 667 (E.D. La. 2009) ).

Attached as Ex. D to Def.'s Mot. Part. Summ. J., ECF No. 93-9; Def.'s Opp'n Ex. F, ECF No. 105-13.

Surprisingly, Total attempts to distinguish Phillips in part on the basis that the parties-including Total-agreed that Alabama law applied. Pl.'s Mot. at 12, ECF No. 99. However, that is the same reasoning that rendered every case on which Total relies irrelevant. In addition, the Fifth Circuit already decided in 2000 that MP 261-the same block Phillips evaluated-was adjacent to Alabama after analyzing the four factors. Snyder , 208 F.3d at 528.

See, e.g. , Pl.'s Mot. Ex. A, ECF No. 99-3, also available at www.marticons.com/sites/default/files/resources/gom_lease-block_map.pdf.

Ex. B to Def.'s Opp'n, Danos , No. 4:13-cv-3803 (S.D. Tex. filed July 3, 2014), ECF No. 21-1.

Pl.'s Mot. Ex. C, ECF No. 99-5; see Appendix D.

Ex. E to Def.'s Mot. Part. Summ. J., Lewis v. Helmerich & Payne Intern. Drilling Co. , 2:13-CV-05994 (E.D. La. filed Feb. 18, 2015), ECF No. 84-12; see Appendix A.